UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN MUIR HEALTH, | No. C-14-04226 DMR |
| Plaintiff(s), | **ORDER GRANTING MOTION TO DISMISS [DOCKET NO. 9]** |
| v. | |
| GLOBAL EXCEL MANAGEMENT, | |
| Defendant(s). | |

Before the court is a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by Defendant Global Excel Management, Inc. [Docket No. 9.] Defendant seeks dismissal of Plaintiff John Muir Health's second cause of action for violation of California Health and Safety Code § 1371.4. The court determined that this matter is appropriate for determination without oral argument. [Docket No. 18.] For the reasons stated below, the motion is **granted.**

## I. BACKGROUND

**A. Factual Allegations**[1]

Plaintiff is a California non-profit corporation that provides medical care to patients. Compl. [Docket No. 4 at 8-41] at ¶ 1. Defendant is a Canadian for-profit corporation with its principal place

---

[1] When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted).

of business in Quebec, Canada. Compl. at ¶ 2.  Defendant is in the business of arranging for the provision of health care services to its enrollees and/or paying for or reimbursing part or all of the cost for those services. *Id.* Plaintiff initially filed this lawsuit in the California Superior Court; on September 19, 2014, Defendant removed the case to federal court on the basis of diversity jurisdiction. *See* Docket No. 4 at ¶ 6.

On July 18, 2012, Plaintiff provided emergency medical treatment to an individual with the initials L.T. Compl. at ¶¶ 8, 28, Ex. A.  Between March 19, 2013 and April 1, 2013, Plaintiff provided medical treatment to an individual with the initials P.C.  *Id.*  Both patients were enrolled in a health care service plan sponsored, administered, and/or financed by Defendant. Compl. at ¶ 8.  At all relevant times, Plaintiff and Defendant did not have a written agreement regarding reimbursement rates for medical care which Plaintiff would provide to patients who were members of Defendant's health plan. Compl. at ¶ 9.  Plaintiff contacted Defendant by telephone to ascertain whether Defendant or its principal was responsible for the costs associated with L.T. and P.C.'s medical treatment. Compl. at ¶ 10.  In response, Defendant's agent provided Plaintiff with the relevant insurance verification and insurance coverage eligibility information for the two patients. Compl. at ¶ 10.  At all relevant times, Defendant held itself out to be the responsible payor for services provided to L.T. and P.C.  Compl. at ¶ 11.

The billed charges from Plaintiff amounted to $58,525.00 for the treatment of L.T. and $551,652.02 for the treatment of P.C., for a total of $610,177.02, which Plaintiff submitted to Defendant for payment. Compl. at ¶¶ 14-15, Ex. A.  To date, Defendant has paid only $149,966.12 to Plaintiff for the medical services provided to both patients L.T. and P.C., despite Plaintiff's demands for the remaining $459,985.90. Compl. at ¶¶ 17-18.

**B.  Causes of Action**

The Complaint brings two causes of action against Defendant: (1) a claim for quantum meruit and (2) a claim for violation of Section 1371.4.

In the quantum meruit claim, Plaintiff alleges that it provided medically necessary services, supplies, and/or equipment to the two patients, that it reasonably expected full payment reimbursement of its billed charges, that it billed charges totaling $610,177.02 for the care of the two

patients, that Defendant benefitted from the care provided to the patients, and that Defendant failed to properly pay Plaintiff by paying only a portion of the billed charges, causing Plaintiff to incur damages. Compl. at ¶¶ 19-26.

Plaintiff's Section 1371.4 claim relates to only Defendant's payment for the emergency medical care that Plaintiff provided to L.T. Compl. at ¶¶ 27-34. Plaintiff claims that Defendant violated Section 1371.4 by failing to properly pay Plaintiff for the emergency medical services, supples, and/or equipment it rendered to L.T. *Id.*

## II. LEGAL STANDARDS

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). A court may dismiss a claim "only where there is no cognizable legal theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)) (quotation marks omitted). A claim has facial plausibility when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). In other words, the facts alleged must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see Lee v. City of L.A.*, 250 F.3d 668, 679 (9th Cir. 2001), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

## III. DISCUSSION

The Knox-Keene Health Care Service Plan Act of 1975 (the "Knox-Keene Act")[2] is "a comprehensive system of licensing and regulation under the jurisdiction of the Department of Managed Health Care." *Bell v. Blue Cross of California*, 131 Cal. App. 4th 211, 215 (2005). Section 1371.4 is part of the Knox-Keene act. It governs compensation for emergency care services

---

[2] The Knox-Keene Act is codified at California Health and Safety Code §§ 1340-1399.835.

3

and requires health care service plans to pay for emergency care rendered to their enrollees regardless of whether the emergency care provider is under contract with the plan. Cal. Health & Safety Code § 1371.4(b) ("A health care service plan shall reimburse providers for emergency services and care provided to its enrollees, until the care results in the stabilization of the enrollee . . . . As long as federal or state law requires that emergency services and care be provided without first questioning the patient's ability to pay, a health care service plan shall not require a provider to obtain authorization prior to the provision of emergency services and care necessary to stabilize the enrollee's emergency medical condition.").

The single question presented in this motion is whether a standalone private right of action exists under Section 1371.4.

**A. The Language of Section 1371.4 Does Not Expressly Create A Private Right of Action**

Plaintiff does not contend that a standalone private right of action may be found in the text of Section 1371.4. Indeed, the language of Section 1371.4 does not expressly create a private right of action. *See* Cal. Health & Safety Code § 1371.4; *California Pacific Reg'l Med. Ctr. v. Global Excel Mgmt., Inc.*, No. 13-CV-00540 NC, 2013 WL 2436602, at *4 (N.D. Cal. June 4, 2013) (analyzing text of Section 1371.4 and concluding that it "contains no language that expressly entitles private parties to a remedy or penalty for violation of the statute").

**B. Plaintiff May Bring UCL[3] or Common Law Claims Based on Section 1371.4**

No California court has yet determined whether a standalone private right of action for violation of Section 1371.4(b) is available. Several California courts have concluded that medical providers may bring private actions for violations of Section 1371.4 under the UCL and common law theories, including quantum meruit. *See id.* (summarizing holdings in *Coast Plaza Doctors Hosp. v. UHP Healthcare*, 105 Cal. App. 4th 693 (2002) and *Bell v. Blue Cross of California*, 131 Cal. App. 4th 211 (2005)). In both *Coast Plaza* and *Bell*, the plaintiff did not allege a standalone Section 1371.4 claim, but rather UCL claims that were based on violations of Section 1371.4. *See Coast Plaza*, 105 Cal. App. 4th at 706; *Bell*, 131 Cal. App. 4th at 214. In *Bell*, the plaintiff also

---

[3] "UCL" refers to California's unfair competition law, codified at California Business and Professions Code § 17200.

alleged an alternative claim for quantum meruit. *Bell*, 131 Cal. App. 4th at 214. Also in both cases, the defendants argued for dismissal of the UCL and/or quantum meruit claims on the basis that the Department of Managed Health Care had exclusive jurisdiction to enforce the Knox-Keene Act, and both courts rejected that argument. *Coast Plaza*, 105 Cal. App. 4th at 706 ("We conclude that the Department [of Managed Health Care] does not have exclusive jurisdiction, and that common law and other statutory causes of action may be brought by Coast."); *Bell*, 131 Cal. App. 4th at 216 ("Although the Department of Managed Health Care has jurisdiction over the subject matter of section 1371.4 (as well as the rest of the Knox–Keene Act), its jurisdiction is not exclusive and there is nothing in section 1371.4 or in the Act generally to preclude a private action under the UCL or at common law on a quantum meruit theory.").

Thus, at a minimum, some California courts have held that a health care provider may enforce Section 1371.4 through a UCL or quantum meruit claim. This much is undisputed.[4]

**C. Section 1371.4 Does Not Create A Private Standalone Right of Action**

While no California court has determined whether Section 1371.4 creates a standalone private right of action, several federal courts have considered the issue.

At least two federal courts have concluded that Section 1371.4 does not create a standalone private right of action. Most recently, in *California Pacific*, *supra*, Judge Cousins extensively analyzed the text of the statute, the case law interpreting it, and its legislative history, and determined that Section 1371.4 does not create a private standalone right of action.[5] 2013 WL

---

[4] Defendant does not dispute that a health care provider may bring a UCL or quantum meruit claim based on a violation of Section 1371.4. Plaintiff notes that it has alleged a quantum meruit cause of action, and "the relief sought under the separate cause of action for Section 1371.4 could just have easily been alleged as part and parcel of the quantum meruit claim for relief." Opp. [Docket No. 12] at 2-3. Thus, Plaintiff requests that if the court dismisses the Section 1371.4 claim, it grant Plaintiff leave to amend its quantum meruit claim to include its Section 1371.4 allegations and/or to assert an additional cause of action under the UCL. *Id.* at 3. This request is discussed below in Section III.D.

[5] The *California Pacific* opinion directly addresses all of the arguments made by Plaintiff in opposition to the motion to dismiss. The court notes that the same lawyers who represent Plaintiff represented the plaintiff in *California Pacific*. Furthermore, Defendant was also the defendant in *California Pacific*, and was represented by the same attorneys representing it in this case. In *California Pacific*, the defendant moved to dismiss the plaintiff's Section 1371.4 claim, arguing that the statute did not create a standalone private right of action. In response, the plaintiff filed an opposition brief that is a nearly verbatim copy of Plaintiff's opposition to the present motion to dismiss. This makes Plaintiff's failure to raise or distinguish the court's unfavorable holding in *California Pacific* rather

1  2436602 at *4-6. *See also Regents of Univ. of California v. Global Excel Mgmt., Inc.*, No. CV 10-
8164 PSG, 2010 WL 5175034 (C.D. Cal. Dec. 10, 2010) ("[T]here is nothing in section 1371.4 that
precludes private causes of action to pursue reimbursement of amounts owed. Nevertheless, those
causes of actions are limited to other statutes, like California's Unfair Competition Law, or common
law doctrines such as equitable indemnity, comparative negligence, contribution, or quantum meruit.
The [plaintiff's] stand-alone claim that Global violated [Section 1371.4] is not proper and must be
dismissed.").

Plaintiff cites to two cases which it claims have concluded that Section 1371.4 creates a
private standalone right of action. This is inaccurate. First, Plaintiff cites *Cedars-Sinai Med. Ctr. v.
Global Excel Mgmt., Inc.*, No. CV 09-3627 PSG, 2009 WL 7322253 (C.D. Cal. Dec. 30, 2009).
However, no standalone claim under Section 1371.4 was alleged in *Cedars-Sinai.* Instead, the
plaintiff health care provider brought claims for breach of contract and implied contract, a claim for
breach of the implied covenant of good faith and fair dealing, a UCL claim, and common law claims
for quantum meruit and unjust enrichment against insurance providers who failed to fully reimburse
the plaintiff for medical services it provided. One defendant moved to dismiss the case on the basis
of a forum selection clause that required actions relating to the insurance policy to be brought in
Canada. *Id*. at *1. The plaintiff argued that the forum selection clause should apply only to claims
related to the insurance policy, but not to the "unassigned claims" for breach of implied contract,
quantum meruit, unjust enrichment, and unfair competition. *Id.* at *4. The court noted in passing
that, "even in the absence of an assignment, Cedars–Sinai's unassigned claims may have been
brought under the Knox-Keene Act." *Id.* at *6 (citing *Bell*, 131 Cal. App. 4th at 216). The court
then concluded that the forum selection clause applied to all of the plaintiff's claims and dismissed
the case. The *Cedars-Sinai* court's passing comment on the availability of a standalone right of
action under the Knox-Keene Act is of little value to Plaintiff, as it relies on *Bell*, which, as
described above, involved a UCL claim and a common law claim for quantum meruit, not a private
right of action under Section 1371.4. *See Bell*, 131 Cal. App. 4th at 214. *See also California*

---

puzzling.

6

*Pacific*, 2013 WL 2436602 at \*6 (analyzing *Cedars-Sinai* and concluding that "[t]here is nothing in the court's opinion that suggests the availability of a stand-alone claim under the Knox–Keene Act").

The only other case that Plaintiff cites in support of its argument is *Enloe Med. Ctr. v. Principal Life Ins. Co.*, No. CIV S-10-2227 KJM, 2011 WL 6396517 (E.D. Cal. Dec. 20, 2011). In *Enloe*, a health care provider brought a standalone Section 1371.4 claim against a health plan for failing to fully pay for medical care the plaintiff provided. *Id.* at \*8. The defendant argued that "[a] violation of Section 1371.4 can only be raised in connection with the assertion of other claims, such as claims under the UCL or at common law under a quantum meruit claim," and cited to *Regents*, *see supra*, 2010 WL 5175034. The *Enloe* court disagreed with *Regents*. First, it noted that *Regents* relied on *Coast Plaza* and *Bell*, both of which held that Section 1371.4 violations could be redressed through the UCL or common law claims, but neither of which foreclosed the possibility of a standalone cause of action under Section 1371.4. The *Enloe* court then noted that "[t]he parties do not adequately brief whether the statute does provide an independent cause of action; defendant's one paragraph argument on this claim does not warrant the court's engaging in a detailed sua sponte analysis." *Id.* at \*9. The court then denied the defendant's motion for summary judgment on the Section 1371.4 claim. Thus, the *Enloe* court's decision not to dismiss the standalone Section 1371.4 claim appears to be based more on the defendant's failure to articulate an argument rather than an analysis of whether the statute creates a standalone right of action, an analysis that the court explicitly declined to undertake.

*California Pacific* picks up where the *Enloe* court left off, and squarely addresses the issue of whether Section 1371.4 creates a private right of action. The *California Pacific* court first laid out the standard articulated by the California Supreme Court in *Lu v. Hawaiian Gardens Casino, Inc.*, 50 Cal. 4th 592 (2010) for determining whether a statute creates a private right of action:

> In *Lu*, the California Supreme Court recognized that a "violation of a state statute does not necessarily give rise to a private cause of action." *Id.* at 596 [] (citations omitted). 'Instead, whether a party has a right to sue depends on whether the Legislature has 'manifested an intent to create such a private cause of action' under the statute.' *Id.* (citations omitted). Such legislative intent may be revealed through the language of the statute and its legislative history. *Id.* (citations omitted). A statute may contain 'clear, understandable, unmistakable terms, which strongly and directly indicate that the Legislature intended to create a private

7

> cause of action,' for instance, by expressly stating that 'a person has or is liable for a cause of action for a particular violation,' or 'more commonly, a statute may refer to a remedy or means of enforcing its substantive provisions, i.e., by way of an action.' *Id.* at 597 [] (internal quotation marks and citations omitted). 'If, however, a statute does not contain such obvious language, resort to its legislative history is next in order.' *Id.* (citations omitted). If a statute does not expressly create a cause of action, there must be a 'clear indication' that the Legislature intended to do so. *Id.* at 600 [].

*California Pacific*, 2013 WL 2436602, at *3. The court then analyzed each of the considerations articulated in *Lu*. First, it examined the text of Section 1371.4 and found that it did not explicitly create a standalone right of action. 2013 WL 2436602 at *4 ("This language does not expressly refer to a cause of action, a remedy, or means of enforcing its substantive provisions. There are no clear or unmistakable terms indicating an intent to create a private right of action for violation of section 1371.4(b)."). The court then reviewed the decisions in *Coast Plaza*, *Bell*, *Regents*, *Cedars-Sinai*, and *Enloe* and concluded that none of those courts had been called upon to analyze whether Section 1371.4 supported a standalone right of action. *Id.* at *4-6. Finally, the *California Pacific* court reviewed the legislative history of the Knox-Keene Act and found that "there is no acknowledgment in the legislative history that a private right of action existed under section 1371.4 . . . which 'is a strong indication the Legislature never intended to create such a right of action.'" *Id.* at *7 (quoting *Lu*, 50 Cal. 4th at 601). Furthermore, the court noted that Section 1371.4 "has been amended three times [since 2002] without any clarification as to whether an independent, private cause of action is available. The Legislature's silence on the issue may be indicative of its intent to not create such a cause of action." *Id.* at *8 (citing *Wilcox v. Birtwhistle*, 21 Cal.4th 973 (1999) (acknowledging that, while not determinative, legislative silence after a court has construed a statute may give rise to an inference of acquiescence or passive approval)). The *California Pacific* court thus concluded that "neither the language nor the legislative history of section 1371.4(b) contain a clear indication of the Legislature's intent to provide for an independent, private cause of action . . . ." *Id.* at *8.

The court agrees with the thorough and sound analysis of the *California Pacific* court and concludes that Section 1371.4 does not create a standalone private right of action. Accordingly, Defendant's motion to dismiss is **granted.**

8

**D. Leave to Amend**

As noted above, *see supra* n. 4, Plaintiff requests leave to amend its quantum meruit claim to incorporate its Section 1371.4 allegations or to assert a cause of action under the UCL premised on Section 1371.4.

Under Federal Rule of Civil Procedure 15(a), leave to amend should be granted as a matter of course, at least until the defendant files a responsive pleading. After that point, leave to amend should be granted unless amendment would cause prejudice to the opposing party, is sought in bad faith, is futile, or creates undue delay. Fed. R. Civ. P. 15(a). Rule 15(a) provides that the court should "freely give leave when justice so requires." Fed. R. Civ. P. 15(a). "This policy is to be applied with extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (quotation omitted). In the absence of an "apparent reason," such as undue delay, bad faith, dilatory motive, prejudice to defendants, futility of the amendments, or repeated failure to cure deficiencies in the complaint by prior amendment, it is an abuse of discretion for a district court to refuse to grant leave to amend a complaint. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Lockheed Martin Corp. v. Network Solutions, Inc.,* 194 F.3d 980, 986 (9th Cir. 1999). These factors do not "merit equal weight," and "it is the consideration of prejudice to the opposing party that carries the greatest weight." *Eminence Capital*, 316 F.3d at 1052.

Defendant argues that Plaintiff should not be granted leave to amend because Plaintiff seeks leave to amend in bad faith. According to Defendant, Plaintiff's counsel was directly involved in the *California Pacific* case, and therefore must have been aware of Judge Cousins' determination that Section 1371.4 does not create a private, standalone right of action. As such, Defendant argues, Plaintiff's attempt to plead a standalone Section 1371.4 claim was an attempt "to take another proverbial bite of the apple to see if by forum shopping they could get a better ruling." Reply [Docket No. 14] at 10. Plaintiff's actions do not amount to inappropriate "forum shopping." As the ruling of a parallel court is not binding, Plaintiff was within its rights to raise the same arguments before a different judge in a different case. After all, judges can disagree.

Moreover, "[a]bsent prejudice, or a strong showing of any of the remaining [ ] factors, there exists a *presumption* under Rule 15(a) in favor of granting leave to amend.'" *FlatWorld Interactives*

9

*LLC v. Apple Inc.*, 12-CV-01956-WHO, 2013 WL 6406437, at *3 (N.D. Cal. Dec. 6, 2013) (quoting *Eminence Capital*, 316 F.3d at 1052) (original emphasis). Defendant has not demonstrated that any prejudice will result from granting leave to amend. Accordingly, Plaintiff is granted leave to amend its complaint.

## IV. CONCLUSION

For the reasons stated above, the court finds that Section 1371.4 does not create a standalone private right of action, and **grants** Defendant's motion to dismiss.

Plaintiff may file an amended complaint to cure the deficiencies noted in this order. Any amended complaint must be filed by **December 5, 2014.**

IT IS SO ORDERED.

Dated: November 21, 2014



DONNA M. RYU
United States Magistrate Judge